J-S07019-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
LEMUEL MARRERO-MONGE, JR. :
:
Appellant : No. 437 MDA 2018

Appeal from the PCRA Order February 21, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0004798-2010,
CP-22-CR-0004800-2010

BEFORE: OLSON, J., McLAUGHLIN, J., and PELLEGRINI*, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JUNE 04, 2019**

Lemuel Marrero-Monge, Jr. appeals from the order dismissing his
petition filed under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.
We conclude that Marrero-Monge has waived the claims he raises on appeal
and that, even if he had not waived them, the claims lack merit. We affirm.

Marrero-Monge was arrested for the murder of Jonathan Martinez
("victim"). Jermaine Williams witnessed the shooting, identified Marrero-
Monge from a photo-array, and identified him in court as the shooter.[1]

_____

* Retired Senior Judge assigned to the Superior Court.

[1] For a complete recitation of the factual history of this case, please see the
trial court opinion pursuant to Pennsylvania Rule of Appellate Procedure
1925(a) filed on direct appeal. *See* Trial Court Opinion, filed June 1, 2012, at
2-12.

On February 29, 2012, a jury found Marrero-Monge guilty of first-degree murder, firearms not to be carried without a license, simple assault, and criminal conspiracy.[2] The trial court sentenced Marrero-Monge to life imprisonment on the murder conviction.[3] Marrero-Monge filed a Notice of Appeal, and this court affirmed the judgment of sentence on February 22, 2013. Relevant to this appeal, we concluded that the trial court did not err in finding the photo array shown to Williams was not unduly suggestive. ***Commonwealth v. Marrero-Monge***, Memorandum, No. 625 MDA 2012, at 16 (Pa.Super. filed Feb. 22, 2013) ("Direct Appeal Memorandum"). On direct appeal, Marrero-Monge referenced Williams' testimony that he believed he informed the officers that the shooter had an eyebrow piercing. Appellant's Br., ***Commonwealth v. Marrero-Monge***, No. 625 MDA 2012, at 12-13 (Pa.Super. filed Sept. 17, 2012). The trial court, however, credited the testimony of the detective, who stated Williams' initial statement to the police did not mention a piercing. Trial Court Opinion, filed June 1, 2012, at 6-7 n.15. We concluded that Williams did not inform the detective of the eyebrow piercing, and stated that "[t]he Commonwealth can hardly be faulted for not including other individuals with piercings when Williams never mentioned [Marrero-Monge's] piercing to the detective." Direct Appeal Memorandum at 16. We further concluded that Williams had an independent basis for his

_____

[2] 18 Pa.C.S.A. §§ 2502(a), 6106, 2701(a)(3), and 903, respectively.

[3] The trial court imposed concurrent sentences for the remaining convictions.

identification of Marrero-Monge and therefore, even if the out-of-court statement was tainted, Williams' in-court identification still was admissible. *Id.* at 16-17

Marrero-Monge filed a *pro se* PCRA petition seeking reinstatement of his right to file a petition for allowance of appeal with the Pennsylvania Supreme Court, which the PCRA court granted. He filed a petition for allowance of appeal, which the Supreme Court denied on December 10, 2014.

On March 3, 2016, Marrero-Monge filed a *pro se* PCRA petition, claiming counsel was ineffective for failing to allege a *Brady*[4] violation during trial and failing to object to inconsistent statements made by Corporal Mark Garrett; Williams would recant his testimony identifying Marrero-Monge; and the Commonwealth violated *Brady* when it withheld information that the state police had the alleged murder weapon in its possession. The PCRA court appointed counsel, who filed a *Turner/Finley*[5] letter and a petition to withdraw as counsel.

On January 22, 2018, the PCRA court granted counsel's petition to withdraw and issued notice of its intent to dismiss the PCRA petition without a hearing. The court found that although the petition was timely, the issues raised lacked merit. On February 8, 2018, Marrero-Monge filed a *pro se* document, noting the court's notice of intent to dismiss and its grant of the

---

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

[5] *Commonwealth v. Turner,* 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley,* 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

petition to withdraw, and requesting that the court appoint counsel to assist in filing a response. On February 21, 2018, the PCRA court denied Marrero-Monge's request for the appointment of counsel and dismissed the petition. Marrero-Monge filed a notice of appeal.

Marrero-Monge raises the following issue on appeal: "Whether the PCRA court erred as a matter of law and/or abused its discretion in dismissing [Marrero-Monge's] PCRA [petition] without a hearing where [Marrero-Monge] was not properly served with the PCRA court's pre-dismissal notice of intent to dismiss as required by Pa.R.Crim.P. 907?" Marrero-Monge's Br. at 4.

Marrero-Monge claims the PCRA court sent its notice of intent to dismiss to a "Lemuel Marrero-Monge other than Appellant, bearing the wrong inmate number, and at the wrong state correctional institution." *Id.* at 14. Marrero-Monge claims his inmate number is not the inmate number listed on the mailing and that he is incarcerated at SCI Huntington, not SCI Greene, as listed on the mailing. He claims he did not receive the court's notice until February 16, 2018, when the PCRA counsel forwarded him a copy of the order and informed him that counsel had been granted permission to withdraw. *Id.*

Marrero-Monge is not entitled to relief. He filed with the PCRA court a request for appointment of counsel for assistance in filing a response to the court's notice of intent to dismiss. This document was dated "Thursday, 8, 2018"[6] and docketed on February 15, 2018. Marrero-Monge did not file a *pro*

---

[6] February 8, 2018 was a Thursday.

- 4 -

*se* response and did not seek an extension of time to do so. The court considered the request for appointment of counsel prior to ruling on the PCRA petition. Even if the court sent the notice of intent to dismiss to the incorrect address, Marrero-Monge still became aware of the notice at least as early as February 8, 2018, and could have responded to the notice with any reasons that he believed entitled him to relief.

Although not included in his questions presented, in his brief, Marrero-Monge alleges that he had meritorious claims that entitled him to PCRA relief: Williams testified at the preliminary hearing that he informed the officers of the eyebrow piercing and, therefore, the opinion of this Court on direct appeal was based on a faulty premise; the Commonwealth failed to disclose that Marrero-Monge's father admitted that it was he, not Marrero-Monge, who shot the victim; and the Commonwealth failed to disclose that Williams had been convicted of various crimes, including false identification to law enforcement officers.

Marrero-Monge has waived these claims, as they were not raised in his *pro se* petition, not mentioned in his counsel's **Turner/Finley** letter, and not raised in a response to the court's notice of intent to dismiss. **See** Pa.R.A.P. 302(a) (providing "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"); **Commonwealth v. Smith**, 121 A.3d 1049, 1054 (Pa.Super. 2015) (finding claims waived where not raised in response to Rule 907 notice).

Further, even if he had not waived the claims, we would conclude they lacked merit.

Marrero-Monge first claims his counsel was ineffective on direct appeal because, contrary to what this Court stated, Williams testified that he informed the detective that the shooter had an eyebrow piercing. This claim lacks merit. Marrero-Monge's appellate counsel argued on direct appeal that the trial court erred in denying the motion to suppress Williams' identification of Marrero-Monge, noting that Williams testified he informed the officers that the shooter had an eyebrow piercing. Counsel cannot be found ineffective for failing to argue something that counsel did, in fact, argue. Further, this Court noted that the trial court credited the testimony of the detective, who testified that Williams' initial description of the shooter did not include that the shooter had an eyebrow piercing. In addition, we concluded that, even if this was error, Williams' in-court identification would have been admissible because Williams' had an independent basis for his identification. Therefore, Marrero-Monge's claim that his trial counsel was ineffective regarding the appellate claim as to Williams' pre-trial identification lacks merit.

Marrero-Monge next claims the Commonwealth failed to disclose exculpatory evidence consisting of a statement made by Marrero-Monge's father admitting that the father shot and killed the victim and Williams' prior convictions for false identification to law enforcement and tampering with physical evidence.

Under **Brady**, the Commonwealth's "failure to divulge exculpatory evidence is a violation of a defendant's Fourteenth Amendment due process rights." **Commonwealth v. Ly**, 980 A.2d 61, 75 (Pa. 2009). "[T]o establish a **Brady** violation, a defendant is required to demonstrate that exculpatory or impeaching evidence, favorable to the defense, was suppressed by the prosecution, to the prejudice of the defendant." **Id.** (quoting **Commonwealth v. Gibson**, 951 A.2d 1110, 1126 (Pa. 2008)). Further, "**Brady** evidence may not be cumulative of other evidence, cannot have been equally available to the defense, and cannot have been discoverable through the exercise of reasonable diligence." **Commonwealth v. Simpson**, 66 A.3d 253, 264 (Pa. 2013) (citations omitted). Where a petitioner raises a **Brady** claim in a PCRA petition, he or she must demonstrate that the alleged **Brady** violation "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." **Ly**, 980 A.2d at 76.

Marrero-Monge first claims the Commonwealth failed to disclose that his father told the police that he, not Marrero-Monge, shot the victim. There is no evidence that such a statement exists. In fact, on direct appeal, Marrero-Monge claimed that his father's statement implicated Marrero-Monge in the shooting.[7] Further, if such a statement did exist, it would have been equally

_____

[7] On direct appeal, Marrero-Monge claimed that the trial court erred in admitting his father's statement because the statement implicated him. This Court concluded the claim lacked merit, noting: "Lemuel Marrero, Sr. was granted immunity but refused to testify, and was held in contempt of court.

available to the defense or discoverable with reasonable diligence, as the alleged witness was Marrero-Monge's father, and the father refused to testify for the Commonwealth at trial.

Marrero-Monge next claims the Commonwealth failed to disclose that Williams had prior convictions. Again, there is no evidence in the record of such convictions. Further, if such convictions did exist, they were discoverable by the exercise of due diligence and therefore not ***Brady*** evidence. ***See Simpson***, 66 A.3d at 264.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/04/2019

---

No statement from Lemuel Marrero, Sr. was ever introduced at [Marrero-Monge's] trial." Direct Appeal Memorandum at 21 (citations to record omitted).